UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARQUIS HAWKINS, | § § § | |
| *Plaintiff*, | § § | |
| v. | § § § | Civil Action No. 3:19-CV-01806-X |
| TRT HOLDINGS, INC. *and* OMNI HOTELS MANAGEMENT CORPORATION | § § § § | |
| *Defendants*. | § § | |

## MEMORANDUM OPINION AND ORDER

Marquis Hawkins sued TRT Holdings, Inc. and Omni Hotels Management Corporation alleging that the defendants fired him for identifying statistical evidence of gender and race-based employment discrimination within Omni. TRT filed a Motion to Dismiss for Failure to State a Claim [Doc. No. 36]. For the reasons below, the Court **GRANTS** the motion to dismiss.

### I. Factual Background

Omni is a North American hotel chain that is wholly owned by TRT, a privately held holding company. TRT and Omni share a corporate office, Chief Officer of Human Resources, and several executive-level employees.

Hawkins was hired to work in the corporate Human Resources department as a Compensation Analyst.[1] Hawkins's job duties required him to produce analytics on

---

[1] The parties dispute exactly who hired Hawkins and which entity he worked for.

1

Omni's employment and compensation practices for use in compliance reviews, regulatory reports, and potential audits. In reviewing the employment data, Hawkins found what he believed to be systemic issues in hiring, pay, and promotion structures within Omni. These issues included: "a significant discrepancy in the amount of men being interviewed and selected for certain positions over women across several properties," "barriers that prevented women from advancing within the organization after they were hired," "various gender disparities in wages, and that a "majority of the management at [Omni] was comprised of White males."

Hawkins reported these findings to the Vice President of Human Resources. A month later, Hawkins was fired and offered a severance package contingent on signing a confidentiality agreement relating to his employment and findings. Hawkins filed a Charge of Discrimination with the Equal Employment Opportunity Commission, received a Right to Sue Letter, and filed this lawsuit for retaliation.

## II. Legal Standards

Under Federal Rule of Civil Procedure 12(b)(6), the Court evaluates the pleadings by "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff."[2] To survive a motion to dismiss, the claimant must allege enough facts "to state a claim to relief that is plausible on its face."[3] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

---

[2] *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2020).

[3] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

alleged."[4] "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."[5] "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"[6]

## III. Analysis

### A. Title VII and the Texas Labor Code

Title VII and the Texas Labor Code prohibit certain unlawful employment practices by "employers."[7] TRT argues that Hawkins failed to sufficiently plead that (1) TRT employed Hawkins and (2) that TRT is an "employer" as defined in both statutes. The Court will evaluate these arguments in turn.

1. Employment Relationship

The Fifth Circuit applies two tests to determine whether an employment relationship exists: (1) the "single employer/integrated enterprise test"[8] and (2) the "hybrid economic realities/common law test."[9] Courts apply both tests in Title VII and the Texas Labor Code cases—first the hybrid test to determine whether any defendant employs the plaintiff and then the integrated enterprise test to determine

---

[4] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[5] *Id.*; *see also Twombly*, 550 U.S. at 545 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").

[6] *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

[7] 42 U.S.C. § 2000e-2(a); TEX. LAB. CODE ANN. § 21.051.

[8] *See Trevino v. Celanese Corp.*, 701 F.2d 397, 404 (5th Cir. 1983).

[9] *See Schweitzer v. Advanced Telemarketing Corp.*, 104 F.3d 761, 763–64 (5th Cir. 1997).

if other defendants also employ him.[10]  Because there is no dispute that Omni employed Hawkins, only the integrated enterprise test applies to whether TRT also employed Hawkins for the purposes of Title VII and the Texas Labor Code.

Under the integrated-enterprise test, courts seek to determine whether two entities are effectively a single employer.[11]  To determine whether to treat two entities as a single employer, courts apply the four *Trevino* factors: (1) the interrelation of operations; (2) centralized control of labor relations; (3) common management; and (4) common ownership or financial control.[12]  The second factor is the most important.[13]

Hawkins alleged the following facts to show that Omni and TRT are the same employer.  As to centralized control of labor relations, Hawkins pled that (1) TRT terminated many of Omni's employees upon acquiring Omni; (2) TRT hired the same Chief Human Resources Officer, Joy Rothschild, to oversee the Human Resources departments of both companies; and (3) all promotions, pay raises, and director or executive hires at Omni and TRT required Rothschild's approval.[14]

Hawkins's allegations also suggest common management.  TRT and Omni are headquartered at the same address and share executive-level employees, such as

---

[10] *Lindsley v. TRT Holdings, Inc.*, No. 3:17-CV-2942-B, 2018 WL 3368930, at *2 (N.D. Tex. July, 10, 2018).  The Texas Labor Code is the "State of Texas equivalent" to Title VII.  *Dimitric v. Tex. Workforce Comm'n*, No. CV G-07-247, 2009 WL 674391, at *1 (S.D. Tex. Mar. 13, 2009).  So, the Title VII analysis of "employer" applies to the Texas Labor Code as well.  *Cornish v. Texas Dep't of Criminal Justice*, No. 3:04-CV-0579R, 2006 WL 509416, at *6 (N.D. Tex. Mar. 2, 2006) (Buchmeyer, J.).

[11] *Trevino*, 701 F.2d at 404.

[12] *Id.*

[13] *Id.*

[14] Doc. No. 33 at 4.

James Caldwell, who was the President and Chief Executive Officer of Omni while simultaneously being President of TRT.[15] And Hawkins pled facts indicating that TRT controls Omni's finances by setting Omni's budget, collecting all of Omni's earnings, and distributing part of those earnings back to Omni.[16] Overall, Hawkins's allegations plausibly state that TRT and Omni are a single employer. Thus, Hawkins adequately pled that he had an employment relationship with TRT for the purposes of Title VII and the Texas Labor Code.

2. Statutory Definition of "Employer"

Title VII defines an "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year."[17] Title II of the Texas Labor Code relies on this same definition of "employer."[18] As TRT points out, Hawkins's complaint failed to plead how many employees TRT and Omni Hotels employs. Therefore, the complaint fails to adequately plead that TRT is an "employer" under Title VII or the Texas Labor Code and consequently fails to state a claim against TRT under either statute. Accordingly, the Court **GRANTS** the motion to dismiss Hawkins's Title VII and Texas Labor Code claims and dismisses the claims without prejudice. The Court will give Hawkins 28 days to refile his complaint and properly plead the employer requirement.

---

[15] *Id.* at 3.

[16] *Id.* at 4.

[17] 42 U.S.C. § 2000e(b).

[18] TEX. LAB. CODE ANN. § 21.002(8)(A).

B. Section 1981

1. Employment Relationship

TRT argues that Hawkins failed to adequately allege an employment relationship for the purpose of section 1981. Courts use the economic-realities test to determine whether a plaintiff is employed by more than one employer in section 1981 claims.[19] Under the economic-realities test, courts consider whether an alleged employer: "(1) possessed the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."[20] When there may be more than one employer, courts "must apply the economic realities test to each individual or entity alleged to be an employer and each must satisfy the four part test."[21] But "each element need not be present in every case."[22] Because no one disputes that Omni employed Hawkins, the Court need only apply the economic-realities test to TRT.

Hawkins's pleadings plausibly state that TRT was his employer. Hawkins's factual allegations that TRT fired Omni employees upon acquiring Omni and that TRT hired Ms. Rothschild as Chief Human Resources Officer over both companies illustrate TRT's power to hire and fire Omni employees, including Hawkins himself.[23]

---

[19] *Watson v. Graves*, 909 F.2d 1549, 1556 (5th Cir. 1990).

[20] *Williams v. Henagan*, 595 F.3d 610, 620 (5th Cir. 2010).

[21] *Watson,* 909 F.2d at 1556.

[22] *Gray v. Powers*, 673 F.3d 352, 357 (5th Cir. 2012).

[23] *See* Doc. No. 33 at 4.

And the allegations that Omni and TRT's joint Chief Human Resources Officer's approval is required for all employer–employee related matters, promotions, raises, and director or executive hiring indicate that TRT supervised Hawkins, controlled his conditions of employment, and determined his rate and method of payment.[24] Although Hawkins does not allege that TRT maintained his employment records, not all elements of the economic-realities test must be satisfied to establish an employment relationship.[25] Overall, Hawkins's pleadings plausibly state that TRT was his employer under the economic-realities test. Thus, the Court declines to dismiss the section 1981 claim on the grounds that Hawkins inadequately pled an employment relationship with TRT.

2. Retaliation

TRT also attacks the adequacy of pleadings supporting the section 1981 retaliation claim itself. Congress enacted 42 U.S.C. § 1981 to prohibit race-based discrimination in, among other things, the making and enforcement of contracts.[26] The statute also "encompasses a complaint of retaliation against a person who has complained about a violation of another person's contract-related 'right.'"[27] The elements of a section 1981 retaliation claims are identical to retaliation under Title VII: (1) the plaintiff engaged in an activity protected by section 1981; (2) was

---

[24] *See id.*

[25] *Gray*, 673 F.3d at 357.

[26] 42 U.S.C § 1981(a).

[27] *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 445 (2008).

subjected to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action.[28]

TRT first argues that Hawkins failed to state a claim under section 1981 because he failed to allege facts that TRT impaired a specific contractual right belonging to Hawkins or that it harbored discriminatory animus against him. But these allegations are irrelevant under these circumstances because Hawkins did not allege direct racial discrimination but rather retaliation for complaining of racial discrimination that violated section 1981.

TRT also argues that Hawkins failed to properly allege the causal link between the protected activity and his termination. Hawkins alleged that he reported race-based discrimination and then was fired a month later without explanation.[29] Hawkins also alleged that his severance package was contingent on signing a confidentiality agreement related to his employment and findings.[30] At this stage of the litigation, these factual allegations are sufficient to plausibly demonstrate a causal link between the reporting and termination.

Finally, TRT argues that Hawkins did not allege sufficient facts that he engaged in a protected activity under section 1981. Section 1981's prohibition of racial discrimination in making and enforcing contracts includes contracts in an employment context and might include "claims of harassment, discharge, demotion,

---

[28] *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004).

[29] Doc. No. 33 at 7.

[30] *Id.* at 8.

promotion, transfer, retaliation, and hiring."[31] So the protected activity Hawkins alleges he engaged in—reporting a violation of section 1981—would have to include reporting or complaining of some conduct that amounted to race discrimination under the statute. In his complaint, Hawkins alleged that he "reported the observations from his audits."[32] And the only "observation" Hawkins identifies that relates to race was that "a majority of management at the Company was comprised of White males."[33] Although this might reflect general race discrimination, Hawkins does not explain how that observation reflects or relates to the race discrimination in the making and enforcement of contract rights that section 1981 encompasses. Without more facts establishing that Hawkins engaged in a protected activity specifically under section 1981, the complaint fails to allege facts that state a plausible claim for section 1981 retaliation. Accordingly, the Court **GRANTS** the motion to dismiss the section 1981 claim and dismisses the claim without prejudice. The Court will allow Hawkins 28 days to replead this claim.

---

[31] *CBOCS West, Inc.*, 553 U.S. at 450 (quoting H.R. Rep. No. 102-40, pt. 2, pp. 92).

[32] Doc. No. 33 at 7.

[33] *Id.*

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS** the motions to dismiss. Hawkins's claims are **DISMISSED WITHOUT PREJUDICE**. The Court will allow Hawkins 28 days to refile his complaint in accordance with this order.

**IT IS SO ORDERED** this 15th day of January, 2021.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE